We'll hear Wilson v. Dynatone Publishing. Ms. Rosario, go ahead. Good morning, Your Honors. I'm Lita Rosario, and I'm representing Charles Still, John Wilson, and Terrence Stubbs, the members of a recording group from the 1970s called Sly, Slick, and Wicked. And this matter involves their claim for ownership of the copyrights in the master recording of a song called Sure Enough that they recorded in 1973. And their rights to the underlying musical composition. Both claims are related to their renewal rights under Section 304 of the Copyright Act, and not the original term of copyright, which would have started to accrue in 1973. In addition, however, Your Honors, this case involves a claim for an accounting. And plaintiffs' appellants here stated a claim for an accounting based upon two separate issues. One, that if they were determined to be the co-authors of the copyrights, that they were entitled to an accounting of monies that they were owed for the use of those copyrights in two new recordings that were released in 2013. That sampled, if you will, that means they took a portion of the original recording and used that in the composition and used it in new recordings that were very successful. One by Justin Timberlake, and another by an artist called Jay Cole, which sold multi-millions of copies. So the sampling was the use of the actual sounds, the actual recorded sounds of the original that are spliced into the Timberlake? Yes. Yes, Your Honor. And the accounting claim, however, is based upon whether or not they're determined by the court to be owners of those copyrights, but also for them to receive compensation as well. Is the argument the same with respect to the original recording, which was described as a work for hire? Or does it end the composition, or are these two separate arguments? Could we decide against you on one and for you on the other? Absolutely, Your Honor. You could, in fact, do that. There are two separate arguments that would apply. The master recording, there's an argument by the appellees that that was, in fact, a work made for hire. I alleged in my complaint, however, though, that the recording was actually made before my clients ever met James Brown. And James Brown, they met with James Brown. They were out of a recording contract at that moment. They had just been released from a contract with Paramount. And they had a meeting with James Brown. They had already recorded the song Sure Enough, which is the master that's in dispute here, when they met James Brown's company and met James Brown. James Brown and his company subsequently took that recording and added his famous horns to the recording. And they commercially released that recording. And Polydor, at the time, they had a company called People Records. And Polydor, which is the predecessor of Universal, filed a copyright registration. My claim is that because the recording was in existence before James Brown added anything to it and before the copyright registration was filed, that, in fact, it cannot legally be a work made for hire. And as such, my client's renewal rights under Section 304 kicked in or vested in 2001 after the initial 28 years. But could you make the argument on the composition even if we don't buy your argument on that? Yes, Your Honor, because with respect to the musical composition, the facts are that my clients filed the first copyright registration regarding the composition before the master recording was ever released by James Brown's company. There's no claim that the original composition was a work made for hire? No, Your Honor, not at all, not at all, just the master recording. So with regard to that, my clients filed a copyright registration. And subsequent to that, a company acting on behalf, well, I guess it's a predecessor company of Warner Chapel, filed a copyright registration. After the song, which was commercially released, which under the copyright law at that time meant it was defective. So that copyright registration actually has no force in effect because it was filed after the musical composition was actually commercially released. So I alleged in my complaint that the only valid copyright registration was the one that was initially filed by my clients before the music, before the original song was actually released. So if we jump forward to the renewal term in 2001, my clients filed a, prior to filing this lawsuit seeking relief, they filed a renewal registration which the Copyright Act expressly states that you don't even have to file a renewal registration. Yeah, if it is for the composition. Yes, for the composition. You don't need to file at all. Right, exactly. Exactly. Or for the master, Your Honor, assuming that it was not a work made for hire. In any event, the renewal term is a whole new issue. Yes, it is, Your Honor. The original term. Yes, it is, Your Honor. Because one can have assigned away or simply not have sued for infringements with respect to the initial term. Exactly. And nonetheless, the renewal term, even if one assigned away the original term so that one had no claim with respect to infringements of the original term, a whole new ball game would arise when the renewal term vested in the original. Yes, Your Honor. It's a new estate, free and clear of all claims from the past. So on a motion to dismiss, the appellees attached to their motion through the affidavit of Mr. Roberts here, my esteemed colleague, a copy of the label copy for the original recording, a BMI registration that took place back in 1974. And based upon that, alleged that those documents showed that my clients were somehow on notice that someone else was claiming their rights. That argument is faulty for two reasons. First, because it only relates to the original term of copyright. Actions taken during the original term of copyright could not put someone on notice during the renewal term that someone is claiming their rights. It's impossible. It's an impossibility. Secondly, there's an issue about a payment of royalties. And in the complaint, I allege that my clients had not received royalties during the time period. And this is where the Gary Frederick Enterprises versus Marvel Characters case becomes very relevant. Because in that case, this circuit threw the case back to the district court. Because an allegation that no royalties have been paid is not definitive of ownership. There's all kinds of reasons why royalties may not be paid, including the fact that there were maybe no royalties earned, which I would assert is the case in this particular situation. Well, if you make that assertion, that isn't a 12b-6. Your Honor. That's something, a factual question that would have to be worked out. I would agree, Your Honor, and that's my position. The district court relied on the proposition from our Kwan case that ownership claim accrues only once. But in the Kwan case, that was fine for the facts of the Kwan case, which did not involve a new estate in the renewal term. That was an issue of whether new events in the original term would give rise to a new opportunity to claim ownership. Exactly, Your Honor. And furthermore, there's another very important factual distinction that needs to be made in this particular case regarding the renewal rights. And that is that my clients were credited authors. Their names were on the label copy. Their names were on the BMI registration. There's never been a dispute that they are the authors of either the master recording or the musical composition. So they're credited and a draconian application of the three year statute of limitations under merchant versus levy, levy to renewal rights cases or cases where people's names are actually appearing on the records, on the copyright registrations is not applicable and should not be applied. Those present different facts that need to be understood in another way and certainly not on a 12b-6 motion. When somebody has a recording that dates back some 30 some years, 40 years, and then after the original term of 28 years has passed, one would have the expectation ordinarily that there's not a lot of activity with an old, old recording like that. And one wouldn't be hounding around, suing people, making claims when there's nothing to make a claim about. Exactly, Your Honor. And in this particular case, my clients came forward in a very timely manner within the three year statute of limitations regarding their ownership interest. And because this case also involves that, their ownership interest in the Justin Timberlake song, Suit and Tie, and the J. Cole song, Chaining Day. Because those are the events that triggered them to stand up and say, hey, wait a minute. That's our song. We're entitled to be paid for that. Thank you, Mr. Rosario. Mr. Jacobs. Good morning, Your Honors. I'm Robert Jacobs from Manette, Phelps & Phillips. And may it please the Court, Ms. Rosario's arguments are interesting. However, the arguments that were actually made below were very different than those that are presented to this panel. Below the argument that was made, it was simply that for a renewal term claim such as at issue here, a different statute of limitations rule applies. In effect, Ms. Rosario was arguing for the application of the statute of limitations that was applied in the Stone case, involving Hank Williams Sr.'s arguable daughter. There, the Second Circuit ruled that where there is uncertainty regarding an heiress claim, that for the duration of that uncertainty, the statute of limitations is deemed not to run, and that it only starts to run once that person's status is clarified. Here, there is no such uncertainty. The rule that this Court announced in Quan that applied in Merchant, that applied recently in the Simmons case just a couple of years ago, is that on ownership claims, there is a fixed three-year statute of limitations from the moment the claim accrues. Here, the contention that appellees have made and that John Jegelmeyer found was not that the claim accrued during the original term, although it did for a variety of reasons, but that the claim accrued in 2001 when the renewal term began. And the reason it accrued in 2001 is because the same assertions of ownership that existed during the original term continued during the renewal term. So, for example, the assertion of rights on the recording, there was a renewal copyright filed by Universal Music Group. It was claimed as a renewal, as a work-for-hire. There were no payments of royalties made from that point forward on the master's side. There had been the registration for performance income with BMI that Ms. Rosario had alluded to during the original term, but the receipt of those monies for the performance continued during the renewal term. The same usage continued during the renewal term. There was no difference. The fact that there were these uses by J. Cole and Justin Timberlake within three years of filing suit is insufficient to restart the statute of limitations. That was specifically rejected, and Kwan was specifically rejected, and Simmons was specifically rejected, and Merchant. So, from our perspective, this boils down to a very simple analysis of whether the claims accrued. Mr. Court's reasoning is that this claim became untimely 40 years ago. Your Honor, Judge Unglemeyer did make that point, but he also made the point very clearly that even measuring from 2001, there was a claim that accrued in 2001 upon the renewal term's commencement. With what result? I'm sorry, Your Honor? With what result? The result being that the claim accrued in 2001. It was time-barred as of 2004. So, from our perspective, the arguments regarding the Friedrich case can't be considered by this Court because they weren't . . . What does it mean to say that a claim accrues at a time when you gain nothing by making that claim? I mean, you know, it's somebody . . . just a completely different thing. Somebody gets hit by a car and has no damages at all, or touches. The more common one is some poison that has no effect. It's given out at one time. Then, years later, it starts to show up. Nowadays, most statute of limitations run from when the time it starts to show up, not when the initial thing was done. And, in a way, that's what we're asking here. In 2001, they may have owned this, but it didn't make any difference. There was no damage from anybody doing anything because this didn't amount to anything. The only damage starts to show up later. Now, when does the statute of limitation run in those cases? Your Honor, this Court has never recognized a delayed discovery in the copyright context, such as it might apply in a toxic tort or in a similar circumstance like that. I know. I mean, there may be no cases, but in a sensible way, what should happen? I mean, that's interesting. This is not even, as in Judge Calabresi's hypothetical, a car accident that occurred and the injury from it doesn't manifest itself until many years later. In this case, the act of infringement that is referred to is not something that occurred in 2001. It's something that occurred with the nonpayment of royalties arising from the Timberlake and the other use. So, in this case, the supposed automobile accident didn't happen, even though some other things might have happened, inconsequential ones, previous that the plaintiff might not even have known about. In other words, it's a fortiori. Understood. In the copyright ownership context, and these are claims involving copyright ownership, the claim accrues at the time of a repudiation of the claimant's ownership rights. And the question of when that repudiation occurred is the issue here. But what repudiation did you do in 2001? Number one, you know— Given that a repudiation under Marvell and other things has to be very clear. The repudiation in 2001 is comprised of multiple parts. The first part is the registration of the renewal term copyright by Universal. But that was a renewal with respect to the record. That's correct, Your Honor. It was not a renewal with respect to the composition. That's correct, Your Honor. But on the composition side, the publisher continued to receive publishing income, did not account to the writers, did not pay the writers. This is all in the complaint? Yes, Your Honor. How much? Dollars-wise? There was several thousands of dollars, to my knowledge, Your Honor. The amount, the quantum, was not in the complaint. The quantum, we didn't get into discovery because of the fact that the case was resolved on the motion to dismiss. But the fact that there were no payments made is alleged in the complaint. The fact that there were no payments made was there, but the question of whether there were any payments due because payments to you had been made isn't there. And if it isn't there, then that isn't a 12B6 issue. It may be that at summary judgment you can show that monies were received and were not paid out and that, therefore, that amounts to a repudiation. But I don't see how on 12B6 you can say we made no payments and, therefore, we repudiated without saying we received X and should have paid Y and didn't do it. Your Honor, in the district court below, the appellants never argued that they were not aware of this adverse ownership claim by the appellees.  They simply argued that their claim did not accrue until the uses of their compositions, their composition and their recording in the J. Cole and Justin Timberlake works. That was the sole argument, and whether the rule applied in Stone should apply here just because it's a renewal term case. It's a very different argument than what Your Honor is talking about. It's a very good point. It's a good point. It's something we can talk about in a more developed record. Is it your position that a copyright owner is under an obligation to a person who is a copyright owner by virtue of having created the work? Having created the work. That that person is under obligation to be constantly monitoring, say, when the renewal term arises, to be monitoring the copyright registry regularly to see if anybody is claiming a copyright in the plaintiff's work? I would argue, Your Honor, that at the commencement of a renewal term that it is incumbent upon somebody who is going to claim that they own the renewal term in opposition to somebody else to actually do something about it. That's a funny argument given that the law says that it goes to the composers even if they do nothing. The law saying that it goes to them even if they do nothing suggests that they don't have to do much. If they have assigned their renewal term rights and they're still alive when the renewal term begins, that is a different story. They assigned their renewal term rights. Correct. And they're alive at the time the renewal term begins. Thank you. Ms. Rosario, you've reserved three minutes. Yes, Your Honors. I also want to make sure that the court is aware that the accounting claim is also a significant claim here, particularly with respect to the master recording. The plaintiff's appellants alleged originally in their responses to the motion to dismiss that as artists they were entitled to receive compensation for the use of the master recordings regardless of, you know, once there was actually income coming in, regardless of their ownership or non-ownership, they had a right. And this question... You're asking for only three years. Isn't that right? Well, in that scenario, Your Honor, that would be, that would cover a time period of six years. But in this case, the relevancy is only the three years when the Jay Cole and the Justin Timberlake songs were released. Doesn't your complaint ask for payment of money? Yes. Covering three years. Yes, it does, Your Honor. Yes, it does. That's before that. Yes. Yeah, for the last three years. Yes, Your Honor. Not going all the way back to the original use. Not even going back to 2001. No, Your Honor, just for the last three years. So, I just want to make that point. It's very significant. On the musical composition side, Dynatone and Warner Chapel have, in fact, been paying my clients under that same type of a theory. And there's no logical reason why the court should have dismissed my client's claim with regard to their entitlement to compensation as artists. There's allegedly, I alleged in the complaint that there was no written agreement that said that they were transferring their renewal term rights. Not that there was no written artist agreement whatsoever. And the appellees acknowledged that they claim that there is such a written agreement. So that written agreement would entitle my client to royalties. With respect to this issue of us not having raised the Gary Frederick Enterprises, the Marvell case issue. The issue is implicit in determining when rights accrue. That is the very issue. So, if there's no activity and there's nothing that should trigger, and in the Gary Frederick Partners case, the non-payment of royalties is specifically listed as some type of an implied repudiation. And there has to be some fact finding to determine the legitimacy of that. A district court can, on a motion to dismiss, just make that finding. With regard to the label copy that the district court used and the BMI registration, the label copy is not conclusive because it happened during the original term of copyright. And can't repudiate rights during the renewal term. And likewise with the BMI registration. And if we are given the opportunity to have a proper discovery in this case, it will become clear that there were no earnings for that song during that time period. From, you know, sometime, you know, probably in the 1980s all the way up until the Justin Timberlake. Can you say to your adversary's argument that the filing of a copyright registration for the renewal term amounted to a repudiation and you should have been aware of it and acted promptly? Well, sure, Your Honor. With regard to that issue, there's plenty of case law out there that states that the filing of the renewal registration does not, by a party, does not imply that that party is actually the owner of the renewal term. That could be, and there are cases where, in fact, the person who filed the renewal term was determined that they were not the owner. In that particular situation, the work for hire issue is important. And I've alleged that under Iqbal and Tremblay that I've stated a plausible prima facie case and that all reasonable inferences should be drawn in my client's favor at the motion to dismiss stage. And with regard to that issue, including the filing of that registration, if, in fact, it was not a work for hire, then their filing of that renewal registration is not validly establishing some type of ownership for them. If your adversary's argument were correct, let's say I'm a painter or a composer and I write a song. And let's say I wrote the song because the copyright law changes over these different periods. So we'll assume that it was written in the early 1970s. Right, before 1978. Before 1978, before the new act comes into effect. So it has a 28-year initial term. And let's say that song just, well, I mean, maybe it has a tiny little bit of play or none at all. And 2001 comes along, so my renewal term comes into effect. According to your adversary's argument, I would need to be every day or every week or every couple of months going down checking the records, however one does that, to see has anybody, this thing is completely dormant, but I need to be constantly checking the registry to make sure that nobody has filed a claim to ownership of my song. So that if 10 years later somebody suddenly infringes my copyright by taking it and saying, oh, no, you're out of time because you should have been checking the record regularly to see whether, that doesn't seem to me to make much sense. The registry of copyrights plays a different kind of a role from the registry of trademarks, for example, which is intended to give notice to the world of the priority of one's claim. Well, I'm sorry. Your Honor, that's correct. I just wanted to. You're happy to agree. Yes, I do agree, Your Honor. Absolutely. That's absolutely. And that's absolutely. Is there any authority to the contrary? Is there any authority? There's no specific authority to the contrary, Your Honor. These issues regarding renewal terms and termination rights under the Copyright Act are pretty novel around the country, not only for this Court but the Ninth Circuit as well. These are new issues that these courts need to be deciding, and I would state that these rights are essentially a pension or a retirement fund for these artists, and that was the legislative intent of the renewal term and of the termination right, to give these artists and these authors a second bite at the apple to try to legitimately claim their rights, and that's what my clients are trying to do. In closing, I'm sorry. It's a long closing. Very short, Your Honor. I would say that this Court should consider the rights under the master recording, the rights under the musical composition, and also, importantly, the accounting rights for them as artists. I'm going to give Mr. Jacobs a moment if he wants to respond particularly to the soliloquy and meditation that we've had at the end. Thank you, Your Honor. I appreciate it. The truth of the matter is there are multiple district court decisions that have recognized the notice provided when an adverse ownership registration is made with the Copyright Office. This Court has not addressed that issue. Thank you. Have any appellate courts in other circuits? Not that I'm aware of, Your Honor. You have no appellate authority. No, Your Honor. I do not. So that was one point I wanted to make. The other point I wanted to make, Your Honor, is something— Where does that leave you, the absence of authority? The absence of authority means that this Court is going to have to consider that question anew. You mean we can't decide this case by summary order? You can, Your Honor. I'm sorry. Did Your Honor have a question? What's the result of your acknowledgment of the absence of authority on that point? Is there any consequence for this case? No, Your Honor. Because of the combination of factors that we have cited and that Judge Engelmeyer relied upon. It isn't just the registration in the Copyright Office. It's the continuation of conduct over decades that didn't change from one decade to the next. And just in closing, as this Court recognized in the Merchant case, there is a copyright marketplace. Yes, Your Honor is correct. Judge LaValle, you are correct that there is a function that is served different by the trademark filing process than by the copyright filing process. However, there is a marketplace where people need certainty as to who owns rights. And the fact that there is a registration that somebody files to renew rights that is not challenged for over a decade does create uncertainty when somebody can come out of the woodwork in the fashion that has occurred here. Well, I'm saying come out of the woodwork when you're talking about the undisputed author of the song and of the recording. It's not exactly out of the woodwork, but anyway. With the work for higher registration, Your Honor, it is a different analysis. Thank you both very much. Thank you. We reserve the decision.